UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SHEILA BRAND, | Case No. 3:12-cv-00544-MMD-WGC |
| Plaintiff, | ORDER |
| v. | |
| JPMORGAN CHASE BANK, N.A. | |
| Defendant. | |

I.    **SUMMARY**

Before the Court are the following motions filed by defendant JPMorgan Chase Bank, N.A. ("Chase"):  Motion for Summary Judgment (dkt. no. 31); Motion to Strike Plaintiff's "Amended Response" to Summary Judgment (dkt. no. 38); and Motion to Strike Plaintiff's "Response to Defendants Reply and Motion for Summary Judgment" (dkt. no. 40). Plaintiff Sheila Brand ("Brand") filed a response to the Motion for Summary Judgment and an "Amended Response" which Chase seeks to strike. (Dkt. nos. 35, 36.) Chase also filed a reply in support of its Motion for Summary Judgment.  (Dkt. no. 37.) For the reasons discussed below, Defendant's motions are granted.

II.    **BACKGROUND**

This dispute between a borrower and lender involves the lender's handling of contractually required hazard insurance on the property and the resulting increase in the borrower's monthly mortgage payments. The Complaint alleges that after years of making timely payments and maintaining the required insurance coverage through her

1    homeowner's association, Chase began contacting Brand about her failure to make
2    payments, increase in monthly mortgage payments and evidence of insurance coverage
3    for the property used to secure the loan.  (Dkt. no. 1-2.)  Based on the records before
4    the Court, the following facts are undisputed.

5           On May 23, 1996, Brand acquired the property located at 65 Smithridge Park in
6    Reno, Nevada ("the Property").  (Dkt. no. 31-2.)

7           On May 21, 1999, Brand obtained from Chase a loan in the amount of
8    $72,904.00 secured by a deed of trust recorded against the Property ("Deed of Trust).
9    (Dkt. no. 31-3 at 2.)  The Deed of Trust provides for Brand to maintain hazard insurance
10   on the Property and to include in the monthly payments any premiums for insurance
11   required to be maintained for the Property. (*Id.* at 11 ¶¶ 2, 4.) The Deed of Trust
12   contains a Planned Unit Rider, which provides that the obligation to maintain insurance
13   was deemed satisfied so long as Brand's homeowner's association maintains as
14   "blanket" policy insuring the Property. (*Id.* at 15.) There was no dispute that such
15   insurance was maintained until March 2010 when Chase did not receive evidence of
16   insurance on the Property for the period after March 2010. (*Id.* at 2.) Brand testified that
17   there was no issue with any insurance for about 15 or 16 years and she did not provide
18   any evidence of insurance to Chase because their agreement was that the
19   homeowner's "association would take care of the insurance." (Dkt. no. 31-5 at 14, 30.)

20          On March 18, 2010, Chase sent Brand a letter requesting proof of insurance.
21   (Dkt. no. 31-3. at 19.)  The letter cautioned that Chase would obtain insurance if Brand
22   failed to provide proof of insurance. (*Id.*) On April 17, 2010, a second letter from Chase
23   warned that failure to provide proof of insurance would result in Chase purchasing
24   insurance to cover the Property at the cost of $700 per year and that the premiums on
25   the insurance obtained by Chase would likely be higher than the insurance Brand could
26   ///
27   ///
28   ///

2

1  secure on her own. (*Id.* at 23.) Brand received both the March and April 2010 letters
2  from Chase.[1] (Dkt. no. 31-5 at 9–15.)

3        When Chase did not receive proof of insurance, Chase notified Brand in a letter
4  dated May 27, 2010, of its purchase of insurance to cover the Property for the annual
5  premiums payment of $700. (*Id.* at 28.) The letter warned that Chase had charged
6  Brand's escrow account for the premiums due and her monthly payment amount might
7  increase as a result. (*Id.*) In the same letter, Chase informed Brand that she may want
8  to obtain her own insurance and, in that event, Chase would cancel the insurance it
9  purchased and charge Brand for the premiums paid only during the time the coverage
10 was in effect. (*Id.* at 29.)

11       On March 16, 2011, Chase notified Brand that it had renewed the lender-placed
12 insurance policy for the same annual premiums of $700 and the premiums would be
13 charged to her escrow account. (*Id.* at 45.) The letter contained the same provision
14 advising Brand to purchase her own insurance. (*Id.* at 46.)

15       On June 1, 2011, Brand's monthly payments increased because of a negative
16 balance in her escrow account resulting primarily from the premiums for the lender-
17 placed insurance. (*Id.* at 3; dkt. no. 31-5 at 22, 24.) Brand then fell behind on her
18 payments and received default notices. (Dkt. no. at 29.) Brand contacted Chase about
19 the increased monthly payments and learned that the increase was due to the lender-
20 placed premiums. (*Id.* at 15, 22; dkt. no. 35-1 at 4.)

21       On March 5, 2012, Chase again notified Brand of its renewal of the lender-placed
22 insurance policy for the same annual premiums of $700 because Brand still had not
23 provided proof of coverage. (Dkt. no. 31-3 at 58.) In the same letter, Chase informed
24 Brand that the premiums would be billed to her escrow account which might result in an

25

26       [1]In her response brief, Brand claims that the March 18, 2010, letter gave her only
27 15 days to provide proof of insurance, which she was unable to provide because the
homeowner's association had the policy. (Dkt. no. 35 at 2.) She further contends that
28 had Chase sent the notice to her homeowner's association, they would have provided
the proof of insurance. (*Id.*)

1   increase to her monthly mortgage payments. (*Id.*)  Chase further informed Brand that
2   its insurance would be in effect until Brand provided proof of coverage at which time
3   Chase would cancel its coverage and refund any unearned premiums. (*Id.*)

4     On March 14, 2012, Brand faxed Chase a copy of the certificate of liability
5   insurance covering her homeowner's association. (Dkt. no. 31-6.)  Brand also testified
6   that she wrote on one of the payments that "I have insurance through the association"
7   and thought that when Chase received the payment they would realize their mistake.
8   (Dkt. no. 35-1 at 33.)  She submitted evidence of Chase's transcript containing a
9   notation on July 5, 2011, that Chase had received written note stating:  "RMI is my
10  association/QBI is my home insurance." (Dkt. no. 35-1 at 31.)

11    On April 12, 2012, after Chase confirmed that Brand's homeowner's
12  association's insurance contained a "blanket" policy covering the Property, Chase
13  cancelled the lender-placed policy and credited Brand's account $2,100 for the three
14  $700 annual premium payments that had been charged to her escrow account.  (Dkt.
15  no. 31-3 at 3.)  Chase issued to Brand two checks for amounts of $326.89 and $844.76
16  for excess credits to her escrow account. (*Id.*)  Brand received these checks. (Dkt. no.
17  31-5 at 16-17, 25.)  There does not appear to be a dispute that Brand cashed these
18  checks.[2]

19    On August 16, 2012, additional adjustments were made to Brand's loan account
20  to remove late charges and reapply her monthly mortgage payments. (Dkt. no. 31-3 at
21  3.)  Brand testified that the paperwork shows "everything is cleared" in response to the
22  question of whether it was her understanding that "everything has been straightened
23  out." (Dkt. no. 31-5 at 28; *see* dkt. no. 35-1 at 56.)

24  ///

---

25    [2]Chase represents in its Motion that Brand cashed these two checks but the cited
26  deposition transcript does not clearly support this representation.  In the cited excerpts
    of Brand's deposition transcript, Brand testified that she received the checks and agreed
27  that she got the money for the one check for $844.76. (*See* dkt. no. 31-5 at 16-17, 25.)
    Brand, in her response brief, does not dispute Chase's representation that she cashed
28  these two checks.

III.    **MOTIONS TO STRIKE**

Brand filed an amended response to the Motion for Summary Judgment and a response to Defendant's reply in support of its Motion for Summary Judgment. Chase's two motions to strike ask the Court to strike these two filings. (Dkt. nos. 38, 40.) Brand has failed to respond to Chase's two motions.  Failure to file points and authorities in opposition to a motion constitutes consent that the motion be granted.  L.R. 7-2(d); *see Abbott v. United Venture Capital, Inc.*, 718 F. Supp. 828, 831 (D. Nev. 1989). Moreover, Brand's amended response (dkt. no. 38) and response to Defendant's reply (dkt. no. 40) were not properly filed.  Local Rule 7-2 permits a motion, response to the motion and a reply in support of the motion.  Any additional filings require leave of court. For these reasons, Defendant's motions to strike are granted.

IV.    **MOTION FOR SUMMARY JUDGMENT**

A.    **Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating

5

a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Moreover, allegations in *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe,* 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *see also Hamilton v. Brown,* 630 F.3d 889, 893 (9th Cir.2011); *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). However, a plaintiff must still present factual allegations sufficient to state a plausible claim for relief. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir.2010). *Pro se* litigants, like ordinary litigants, must comply strictly with the summary judgment rules. *See Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir.2007) *Id.* at 1219 (citing *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir.1986).

**B.     Discussion**

The Complaint alleges a single claim for conversion, seeking damages and award of the principal balance of the loan[3] as relief.  While Chase makes arguments as to other potential claims, the Court will only address the claim actually asserted in the Complaint.

"Conversion is a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (quotation omitted).  Thus, conversion applies to real property, not personal property.  Further, conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge. *Custom Teleconnect, Inc. v. Int'l Tele-Services, Inc.*, 254 F. Supp. 2d 1173, 1182 (D. Nev. 2003).  However, to be a conversion, an act "'must be essentially tortious; a conversion imports an unlawful act, or an act which cannot be justified or excused in law.'" *Ferreira v. P.C.H. Inc.*, 774 P.2d 1041, 1043 (Nev. 1989) (*quoting Wantz V. Redfield*, 326 P.2d 414, 414 (Nev. 1958). While the question of whether conversion has occurred is generally a factual issue for the jury, *see Evans*, 5 P.3d at 1048, the Court finds this claim fails as a matter of law because Plaintiff's conversation claim relates to real property, not personal property.

The Complaint makes allegations detailing Brand's difficulties in resolving the issue relating to evidence of insurance coverage and increased monthly payments. (Dkt. no. 1-2.)  The Complaint does not make any specific allegations in support of the conversion claim.  Allegations supporting the conversion claim consist of one paragraph incorporating the allegations in the Complaint.  (*Id.* at 5.)  In her response brief, Brand argues that her conversion claim is legally sufficient because "Plaintiff believes there

---

[3]The Complaint asks "that the Court grant Plaintiff the principal balance of the property." (Dkt. no. 1-2 at 4.)  The Court assumes Plaintiff means the principal balance of the loan.

1   was a threat to her property being taken from her." (Dkt. no. 35 at 9.)  However, Brand's

2   allegations involve the real property secured by the loan and thus cannot  establish a

3   conversion claim even if Brand thought there was a threat to take her property.  *Evans*,

4   5 P.3d at 1048.

5        Moreover, even construing the Complaint liberally under the less stringent

6   standard for *pro se* pleadings as alleging that the conversion claim involves the increase

7   in the monthly payments as a result of the lender-placed policy, such allegations still

8   cannot support Brand's conversion claim. In her deposition, Brand testified that she was

9   informed at close of escrow that the homeowner's association would take care of the

10  insurance and she did not submit any evidence of insurance for 15 or 16 years. (*See*

11  dkt. no. 35-1 at 13.) Brand further testified that when she learned that the monthly

12  increase was due to the lender-placed insurance policy, she knew Chase had made a

13  mistake about the insurance in misclassifying her unit, a multi-complex unit, as one

14  unit.[4] (*See* dkt. no. 35-1 at 4.) There is no dispute that Chase had a right under the

15  Deed of Trust to obtain evidence of insurance, that Chase communicated with Brand

16  about the need to show proof of insurance between March 2010 and March 2012, and

17  that Chase obtained insurance for two policy years from March 2010 to March 2012 and

18  provided a copy to Brand before Brand submitted proof of insurance.[5]  Moreover, when

19  Brand sent Chase her homeowner's insurance policy, Chase reversed the charges for

20  the premiums and adjusted Brand's account to remove late charges, resulting in the

21  same monthly payments that Brand was required to make before the dispute over

22  insurance coverage arose. Based on Brand's testimony and the undisputed facts,

23  Chase made a mistake and corrected the mistake when Brand forwarded proof of her

24

25        [4]Brand in her response brief contends that Chase created the problem that
26  resulted in "late night phone calls, threats of foreclosure and financial and emotional
    strain," due to its "poor administration and lack of research."  (Dkt. no. 35 at 2.)

27        [5]As noted, Brand did indicate in one of her payments that she had insurance, but
28  it is undisputed that she did not send a copy of her homeowner's insurance policy to
    Chase until March 2012.

1  homeowner's association insurance policy.  Chase's conduct in obtaining the lender-

2  placed policy and charging Brand for the premiums, even if it was the result of a mistake

3  as alleged by Brand because Chase did not require proof of insurance for 15 or 16

4  years, does not import an "unlawful act, or an act which cannot be justified or excused

5  in law" to establish a claim for conversion.  *See Ferreira v. P.C.H. Inc.*, 774 P.2d 1041,

6  1043.

7       While it was unfortunate that Chase's mistake over the insurance coverage and

8  increased monthly payments took several years to resolve and caused distress to

9  Brand, the mistaken conduct cannot support a claim for conversion.

10  **V.  CONCLUSION**

11       It is therefore ordered that the following motions filed by Defendant are granted:

12  Motion for Summary Judgment (dkt. no. 31); Motion to Strike Plaintiff's "Amended

13  Response" to Summary Judgment (dkt. no. 38); and Motion to Strike Plaintiff's

14  "Response to Defendants Reply and Motion for Summary Judgment" (dkt. no. 40).  It is

15  further ordered that judgment be entered in favor of Defendant.  The Clerk is instructed

16  to close this case.

17

     DATED THIS 25th day of February 2014.

18

19

20                                        _____

21                  MIRANDA M. DU

                UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28